FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 SEP 22  P 1: 40

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

ROBERT MATTHEWS,

    Plaintiff,

v.

FRANK BISHOP, JR., et al.,

    Defendants.

\*

\*

\*

\*

\*

\*

\*

Case No.: GJH-14-2389

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

On July 23, 2014,[1] Petitioner Robert Matthews filed the instant Petition for Writ of

Habeas Corpus attacking his 2010 conviction for first degree murder. ECF No. 1. Respondents

filed an Answer to the Petition, arguing that the Petition should be dismissed or denied without a

hearing because it contained unexhausted and/or procedurally defaulted claims. ECF No. 6.

Matthews filed a Reply to Respondent's Answer. ECF No. 13. After reviewing these papers, the

Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254*

*Cases in the United States District Courts; see also* 28 U.S.C. § 2254(e)(2). For the reasons set

forth herein, the Court shall deny and dismiss the Petition with prejudice.

---

[1] The Petition was signed on July 23, 2014, and is deemed filed on that day. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

1

## I.    BACKGROUND

On September 10, 2010, Matthews entered an *Alford*[2] plea to first degree murder in the

Circuit Court for Baltimore County. ECF No. 12-2 at 3, 10; ECF No. 12-4 at 1.[3] He subsequently

filed a Motion to Withdraw the Guilty Plea and a Motion for a New Trial. ECF No. 6-2 at 10;

ECF No. 12-4 at 2. At a November 1, 2010 disposition hearing, both Motions were denied, and

Matthews was sentenced to life in prison, all but 60 years suspended. ECF No. 12-4 at 2.

Matthews, through counsel, filed an Application for Leave to Appeal to the Court of Special

Appeals of Maryland, raising the following grounds:

(1) The trial court committed error by failing to grant the Motion to Withdraw
    Guilty Plea which was filed by the Defendant;

(2) The trial court also committed error by failing to grant the Motion to
    Withdraw Guilty Plea because the Defendant did not fully understand the
    consequences of entering into an *Alford* plea that day; and

(3) The trial court committed error by failing to consider the mitigation evidence
    presented by the Defendant.

ECF No. 6-3, at 2. The court summarily denied the Application on July 19, 2011. ECF No. 6-4 at

1-2. The mandate was issued on August 18, 2011. *Id.* at 3.

Matthews filed a counseled Petition for Post-Conviction Relief in the Circuit Court for

Baltimore County on March 19, 2013. ECF No. 6-5. Matthews raised the following grounds:

1. Where the record is silent on the elements or the specific nature of the crime to
   which the Defendant is pleading guilty resulting from serious attorney error by
   deficient advisement, it is no longer permitted to presume that defense counsel
   has privately advi[s]ed the defendant sufficiently to elicit his knowing and
   voluntary acquiescence to the plea.

---

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated
by that system.

2. Trial Counsel obviated the voluntariness of the guilty plea through out of court representations to the Defendant that were both: (1) absent substance as to the elements and nature of the crime; (2) negligently optimistic about possible sentences the defendant would receive.

ECF No. 6-5 at 1; ECF No. 12-4 at 1. The post-conviction court denied the Petition on January 14, 2014. ECF No. 12-4. On February 28, 2014, Matthews filed an untimely *pro se* Application for Leave to Appeal the decision, which the Court of Special Appeals dismissed on jurisdictional grounds on July 22, 2014. ECF No. 6-7; ECF No. 6-8. The court's mandate issued on August 22, 2014. ECF No. 6-8.

The instant Petition was filed on July 23, 2014.[4] Matthews claims that his guilty plea was deficient because:

(1) He was not informed of the nature and elements of first-degree murder;

(2) The plea was not supported by the facts;

(3) His trial counsel misled him regarding the terms of the plea agreement; and

(4) When he entered the plea he was suffering from mental illness.

ECF No. 1 at 12–13; ECF No. 6 at 8. Respondents filed an answer in which they argued that two of Matthews' claims were unexhausted and two had been procedurally defaulted. ECF No. 6 at 14, 18. Matthews subsequently filed a "Motion to Withdraw Unexhausted Claims in Petition for Writ of Habeas Corpus and Submit a [sic] Amended Petition for Writ of Habeas Corpus Relief." ECF No. 7. On December 23, 2014, the Court granted Matthews' Motion to Withdraw his unexhausted claims and denied, without prejudice, his Motion to File an Amended Petition for Writ of Habeas Corpus Relief. ECF No. 8 at 1. The Court also gave Matthews additional time to

---

[4] *See* n. 1.

3

respond to Respondents' argument that the two remaining claims had been procedurally

defaulted. *Id.* at 2. Matthews filed a Reply on March 22, 2015. ECF No. 13.

## II.    STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the

Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a) (2012). Section 2254(d)

provides that:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination
> > of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The statute sets forth a "highly deferential standard for evaluating state-court

rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and is "difficult to meet," *Cullen v.

Pinholster*, 563 U.S. 170, 181 (2011). The United States Court of Appeals for the Fourth Circuit

recently observed that "[i]f this standard is difficult to meet, that is because it was meant to be."

*Nicolas v. Attorney Gen. of the State of Maryland*, 820 F.3d 124, 131 (4th Cir. 2016)(quoting

*Richter*, 562 U.S. at 102).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1)

where the state court "arrives at a conclusion opposite to that reached by the [Supreme] Court on

a question of law" or "confronts facts that are materially indistinguishable from a relevant

Supreme Court precedent and arrives at a result opposite to [the Supreme] Court." *Williams v.

Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application analysis" under

2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S.at 101 (quoting *Yarborough.v Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Under § 2254 (d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's...determination." *Id.* (internal citation omitted). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* Matthews' claims will be examined under this framework.

## III.    DISCUSSION

Matthews' remaining two claims are that: (1) he was not informed of the nature and

elements of first-degree murder; and (2) his plea counsel misled him with respect to the terms of

the plea agreement. ECF No. 8 at 1–2. The Court must first determine whether these claims,

despite being exhausted, have been procedurally defaulted.

### A. Procedural Default of Claims

Respondents argue that Matthews has procedurally defaulted his remaining exhausted

claims, noting that the circuit court denied the claims on the merits and that, "[d]espite

opportunity to do so, Matthews failed to file a timely Application for Leave to Appeal this

adverse decision, and the time for doing so has long ago expired." ECF No. 6 at 18 (internal

citation omitted). The Court of Special Appeals dismissed Matthews' untimely Application. ECF

No. 6-8. Therefore, Respondents contend, the claims have been procedurally defaulted for

federal habeas purposes. ECF No. 6 at 18.

In response, Matthews first asserts that the claims are not procedurally defaulted because

he did not "deliberately bypass state procedural rules . . . ," ECF No. 13 ¶ 3, or "intentionally

relinquish or abandon a known right or privilege of his claims," *id.* ¶ 7. Matthews, relying on §

2254(b)(1)(B)(ii), contends that a habeas petitioner does not have to exhaust state court remedies

where circumstances exist that render such process ineffective to protect the rights of the

applicant. *Id.* ¶ 10 (citing 28 U.S.C. § 2254(b)(1)(B)(ii)). He argues that interference of state

officials "denie[d] him a meaningful opportunity of full and fair litigation review . . . ." *Id.* ¶ 3.

The exhaustion doctrine, codified at 28 U.S.C. 2254(b)(1),[5] "is principally designed to

_____

[5] Section 2254(b)(1) states that:

6

protect the state courts' role in the enforcement of federal law and prevent disruption of state

judicial proceedings. Under our federal system, the federal and state courts [are] equally bound

to guard and protect rights secured by the Constitution." *Rose v. Lundy*, 455 U.S. 509, 518

(1982)(alteration in original)(internal citations and quotation marks omitted). Moreover, "it

would be unseemly in our dual system of government for a federal district court to upset a state

court conviction without [giving] an opportunity to the state courts to correct a constitutional

violation . . . " *Id.* Thus, the *Rose* Court cautioned litigants, "before you bring any claims to

federal court, be sure that you first have taken each one to state court." *Id.* at 520; *see also*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999)("Federal habeas relief is available to state

prisoners only after they have exhausted their claims in state court.").

    In *O'Sullivan*, the Supreme Court stated: "To . . . 'protect the integrity' of the federal

exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also

whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his

claims to the state courts." 526 U.S. at 848 (internal citation omitted); *see also id.* at 844

("Section 2254(c) requires only that state prisoners give the state courts a *fair* opportunity to act

on their claims."). The inquiry, then, is "[w]hether a prisoner who fails to present his claims in a

petition for discretionary review to a state court of last resort has *properly* presented his claims to

---

      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the
judgment of a State court shall not be granted unless it appears that--
    (A) The applicant has exhausted the remedies available in the courts of the State; or
    (B) (i) there is an absence of available State corrective process; or
     (ii) circumstances exist that render such process ineffective to protect the
    rights of the applicant.
    (C) An applicant shall not be deemed to have exhausted the remedies available in the courts of the
      state, within the meaning of this section, if he has the right under the law of the state to raise,
      by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1) (2012).

the state courts . . . Because we answer this question 'no,' we conclude that [petitioner] has

procedurally defaulted his claims." *Id.* at 848. Stated differently, "state prisoners must give the

state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process." *Id.* at 845. The *O'Sullivan* Court

noted, however, that:

> In this regard, we note that nothing in our decision today requires the exhaustion
> of any specific remedy when a State has provided that that remedy is unavailable.
> Section 2254(c), in fact, directs federal courts to consider whether a habeas
> petitioner has "*the right under the law of the State to raise, by any available
> procedure,* the question presented." (Emphasis added.) The exhaustion doctrine,
> in other words, turns on an inquiry into what procedures are "available" under
> state law. In sum, there is nothing in the exhaustion doctrine requiring federal
> courts to ignore a state law or rule providing that a given procedure is not
> available.

*Id.* at 847-48; *see also Breard v. Pruettt*, 134 F.3d 615, 619 (1998)(quoting *Coleman v.*

*Thompson*, 501 U.S. 722, 375 n.1 (1991))("A procedural default also occurs when a habeas

petitioner fails to exhaust available State remedies and 'the court to which the petitioner would

be required to present his claims in order to meet the exhaustion requirement would now find the

claims procedurally barred.'").[6]

Respondents argue that "the only exhausted claims raised in Matthews' petition are

procedurally defaulted for federal habeas corpus purposes . . . ." ECF No. 6 at 18. When a claim

is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas

claim unless the petitioner can show: (1) both cause for the default and prejudice that would

result from failing to consider the claim on the merits; or (2) that failure to consider the claim on

the merits would result in a fundamental miscarriage of justice, i.e., the conviction of one who is

---

[6] A procedural default may also occur when a state court declines "to consider the merits [of a claim] on the basis of
an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

actually innocent. *See Murray v. Carrier*, 477 U.S 478, 495-96 (1986). "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in State court at the appropriate time." *Breard,* 134 F.3d 615, 620 (4th Cir. 1998) (internal citation omitted). In order to demonstrate prejudice, a habeas petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494 (quoting *Frady*). Even when a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

As noted above, the Court of Special Appeals dismissed Matthews' appeal of the denial of his Petition for Post-Conviction Relief on jurisdictional grounds, *i.e.*, because the appeal was untimely. ECF No. 6-8, at 1–2. Such dismissal clearly rests on an adequate and independent state ground. *See Breard*, 134 F.3d at 619 ("If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim."). Therefore, the Court concludes that Matthews has procedurally defaulted his remaining two claims.

Alternatively, Matthews argues that he has shown both cause for and prejudice resulting from the procedural default of his claims. Regarding cause, he states that he did not receive a copy of the post-conviction court's January 14, 2014, Statement and Order until February 6, 2014, ECF No. 1, at 11, or even know that an order had been issued, ECF No. 13 ¶ 13. Matthews contends that the certified case history he requested from the circuit court "is void of any such

9

statement and order . . . ," thereby showing cause. *Id.* ¶ 7. Further, he contends that "the Clerk's Case History ... is confusing, out of order in sequence of events and dates of the calendar that no lay person such as Petitioner or Professional Law Person[n]el cannot reasonably rely on for accuracy verbatim a statement and order filed by the Court denying Petitioner post-conviction relief." *Id.* ¶ 8; *see also* ECF No. 13-2.[7] As prejudice, Matthews points to his inability to file an Application for Leave to Appeal the denial within the required thirty days, resulting in the dismissal of his eventual Application. ECF No. 13 ¶ 13. Matthews further claims that he is prejudiced "because he can only file one petition for [post-conviction] relief under Md. Code. Section 7-103(a) of the Criminal Procedure Article . . . ." *Id.* ¶ 16.

Although there were circumstances "external to the defense" that delayed Matthews' ability to file his Application for Leave to Appeal in the Court of Special Appeals, those circumstances did not impede his ability to file "at the appropriate time," *Breard*, 134 F.3d at 620., First, the post-conviction hearing concluded on December 20, 2013. ECF No. 12-3, at 1. The judge stated that he would "prepare and file a Statement and Order with respect to [his] decision in this case as soon as possible." *Id.* at 112. There is no evidence in the record that Matthews made any inquiries of his post-conviction attorney as to whether a decision had been issued until his mother "found out and informed [him]." ECF No. 1-1 at 11. He does not say when this occurred.

Second, and more importantly, by his own admission, Matthews received a copy of the Circuit Court's January 14, 2014, Statement and Order from counsel on February 6, 2014.[8] ECF

---

[7] Matthews additionally notes that the case history he received from the circuit court did not include the address of the facility where he was confined at the time of the post-conviction proceedings. ECF No. 13 ¶ 12.

[8] Matthews states that his post-conviction counsel received a copy of the Statement and Order on January 9, 2014.

No. 1, at 11. The time for filing an Application for Leave to Appeal expired on February 13, 2014.[9] Md. Rule 8-204(b)(2). Rather than trying to file a timely appeal,[10] Matthews instead began filing motions for revisory power under Maryland Rule 2-535, initially asking the Circuit Court to send him a copy of the Statement and Order. ECF No. 13 ¶ 11; ECF No. 13-3 at 1. In his final correspondence, a letter to the Circuit Court received on April 10, 2014, Matthews requested that the thirty day period in which to file an application for leave to file an appeal of the post-conviction court's decision begin to run on March 28, 2014, the date he received a copy of the Statement and Order from the Circuit Court. ECF No. 13-3, at 1. That request, which the Court treated as a motion, ECF No. 6-1 at 12, was denied on June 12, 2014, *id.*; ECF No. 13-1 at 1.[11] Matthews' *pro se* Application for Leave to Appeal was filed in the Circuit Court on April 23, 2014, received by the Court of Special Appeals on May 5, 2014, and dismissed on July 22, 2014. ECF No. 6-7, at 1; ECF No. 6-8.

In sum, Plaintiff's procedural default was not due to external circumstances, but, rather, though his own decisions. Further, as Plaintiff has not proven cause for his procedural default, the Court will not address his prejudice arguments as a showing of both cause and prejudice is

---

(ECF No. 1-1, at 5). Although the Statement and Order was signed on January 9, 2014, it was not filed until January 14, 2014. (ECF No. 12-4 at 1, 8). The Court assumes that counsel received a copy of the decision on January 14, 2014.

[9] Matthews also states that post-conviction counsel told his family that counsel would not file an application for leave to appeal on Matthews' behalf unless he received more money. ECF No. 1-1 at 5. He does not indicate when this conversation took place.

[10] According to Matthews, he received the Statement and Order on a weekend and by the time he mailed an appeal it would have been too late. ECF No. 1-1 at 5. He sent his Notice of Appeal to the Circuit court on March 31, 2014 three days after receiving the Statement and Order from that court. *Id.* at 6.

[11] Matthews complains that the February 28, 2014, and March 31, 2014, copies of the docket he received from the Circuit Court differed in that the former did not include an entry recording the Statement and Order, while the latter did. ECF 13-3 at 1; *id.* at 2-3. While this may be true, it was not enough to persuade the post-conviction court to grant his request to extend the time in which to file an application for leave to appeal. *Id.* at 1.

11

required to excuse a procedural default. *See Breard*, 134 F.3d at 620 (declining to address prejudice because petitioner had not shown cause for his procedural default).

Additionally, although Matthews has not argued the fundamental miscarriage of justice exception, the Court, nevertheless, must consider whether failing to consider Matthews' claims would result in a fundamental miscarriage of justice or, in other words, the conviction of one who is actually innocent of the crime charged. *Schlup*, 513 U.S. at 314–15, 321. In this context, a petitioner's claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 315. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Id.* at 324. To meet this gateway standard, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

Matthews has provided no new evidence or any basis for the Court to conclude that he is actually innocent of the murder to which he pled guilty, save an occasional unsupported statement that he did not commit the crime, ECF No. 1 at 13; ECF No. 1-1, at 2, 5, and a narrative of his version of events surrounding the murder, ECF No. 1-1 at 3-4. That account differs markedly from the statement of facts presented by the Assistant State's Attorney at the plea hearing, ECF No. 6-2, at 12–17, which Matthews, through counsel, agreed the State would be able to prove if he were to go to trial, *id.*, at 17–18 ("[W]e agree those are the facts the State

would elicit were this case to go to trial. No additions, corrections, or modifications to that.").[12]

Based on that statement of facts, the Circuit Court found Matthews guilty of first degree premeditated murder. *Id.* It cannot be said that "no reasonable juror would have found [Matthews] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Therefore, Matthews has not met the *Schlup* standard, even assuming that his claims are meritorious, in order to pass through the "actual innocence" gateway. *Id.*; *see also Breard*, 134 F.3d at 620 (finding no miscarriage of justice had occurred because "[i]n no set of circumstances has [the petitioner] made a showing that he is actually innocent of the offense he committed").

Matthews has not demonstrated cause for the procedural default of his two remaining claims, or that "no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Therefore, the Court finds that the claims have been procedurally defaulted for federal habeas purposes.

### B. Merits of Claims

Even if Matthews had not procedurally defaulted his claims, they would fail on the merits, as the Circuit Court found. ECF No. 6 at 18. As noted above, Matthews first alleges that he did not understand what he was pleading to, and, second, that his attorney misled him as to the terms of the plea agreement. ECF No. 1 at 12–13.[13]

The Circuit Court, in a Statement and Order filed on January 14, 2014, found with respect to Matthews' first claim that:

> Md. Rule 4-242(c) requires that a defendant's guilty plea be knowing and

---

[12] By entering an *Alford* plea, Matthews admitted that the State's evidence against him was persuasive. ECF No. 6-2 at 6-7.

[13] These claims are Grounds A and C in the Petition. ECF No. 1 at 12–13.

13

voluntary. For a [plea] to be knowing and voluntary, the defendant must make the plea with a full "understanding of the nature of the charge." Md. Rule 4-242(c)(1). The lawfulness of a defendant's guilty plea is determined, whether, considering of the totality of the circumstances, a judge "could fairly determine that the defendant understood the nature of the charge to which he pleaded guilty." *State v. Priet*, 289 Md. 267, 291 (1981). Furthermore, as explained in *State v. Daughtry*, 419 Md. 35, 71 (2011) Maryland Rule 4-242(c) does not require counsel for the defendant or the court to recite on the record the elements of the offense; the determination is made by examining whether the totality of the circumstances demonstrate the defendant has entered a plea knowingly, voluntarily and intelligently.

Petitioner claims that between January, 2008 through September, 2010, Mr. Henslee and the Petitioner met approximately ten (10) times. Petitioner claims that the conversations were largely centered around Petitioner's memory of the events that occurred the night of the murder. Petitioner testified he understood he was being charged with murder, however, he claims Mr. Henslee neglected to explain to him the degree, nature, and elements of the offense; in other words, what the State would have to show to prove him guilty.

Incorporated into this allegation is Defense Counsel's assertion that Petitioner suffers from "diminished capacity" of some sort.[14] Several mental illnesses were mentioned during the hearing including bipolar disorder, schizophrenia, as well as a stated prolonged drug use over the course of Petitioner's life. The Court notes that Henslee had the Petitioner undergo both evaluations for Competency and Not Criminally Responsible. The results of both evaluations were that the Petitioner was both competent and criminally responsible. Notably, at the hearing on the post-conviction, the Petitioner was lucid, able to confer with counsel, willing to participate in his own defense, and at one point read into the record a letter Henslee had written him.

Henslee testified at trial that he did believe his client had difficulty understanding certain issues at times, however, he testified that he was able to overcome these issues by taking the extra time to break down the concepts and was ultimately confident the Petitioner understood everything. Henslee testified that he was in contact with the Petitioner's mother, Sherry Matthews, and brought Ms. Matthews to the Baltimore County Detention center to help assist the Defendant in making the decision to plead guilty and ensure that the Defendant understood exactly what he was doing by entering a plea of guilty.

Regarding the specific explanation of the elements of the offense, Henslee testified that he recalled specifically explaining the term "premeditation" to both Petitioner and his family as he was concerned it would be an important element in

---

[14] This claim is not before the Court. ECF No. 8 at 1.

the State's case. Aside from Henslee's testimony, the Court finds most credible
the colloquy between Henslee and Petitioner at the time of the plea hearing where
Petitioner indicated to the Court that he understood what it meant to plead guilty
and that he had been informed of all of the elements of the charges against him.
Judge Cahill even went a step further in questioning the Defendant to ensure that
the Defendant did, in fact, understand the elements of the charges against him and
how he was proceeding that day.

ECF No. 12-4 at 2–4 (transcript citation omitted).

"A guilty plea operates as a waiver of important rights, and is valid only if done

voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant

circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)

(quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also Henderson v. Morgan,* 426

U.S. 637, 644–45 (1976) (stating that a guilty plea "cannot support a judgment of guilt unless it

was voluntary in a constitutional sense"); *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) ("The

standard was and remains whether the plea represents a voluntary and intelligent choice among

the alternative causes of action open to the defendant."). If a defendant pleads guilty without

having been informed of the crime's elements, the standard is not met and the plea is invalid.

*Stumpf*, 545 U.S. at 183; *Henderso*n, 426 U.S. at 645 (noting that plea could not be voluntary

unless defendant received "'real notice of the true nature of the charge against him, the first and

most universally recognized requirement of due process'") (quoting *Smith v. O'Grady*, 312 U.S.

329, 334 (1941)).

Matthews claims that the "elements and nature of the charge were not explained to [him]

or on record." ECF No. 1 at 13. Here, as he did in his state post-conviction petition, Matthews

relies on *State v. Daughtry*, 18 A.3d 60 (Md. 2011). In *Daughtry*, the Court of Appeals of

Maryland held that:

[R]egarding the issue of the defendant being made aware of the nature of the

15

> charges against him, where the record reflects nothing more than the fact that a
> defendant is represented by counsel . . . and that the defendant discussed
> generically the plea with his or her attorney, such a plea colloquy is deficient
> under Rule 4-242(c),[15] and the plea must be vacated.

*Id.* at 81. The *Daughtry* court reiterated that the test for determining whether a guilty plea is

voluntary under current Rule 4-242(c) "is whether the totality of the circumstances reflects that a

defendant knowingly and voluntarily entered into the plea." *Id.* at 81–82. The court went on to

list factors that should aid the trial court in making the determination: (1) the complexity of the

charge; (2) the personal characteristics of the accused; and (3) the factual basis proffered to

support the court's acceptance of the plea. *Id.* at 82. Finally, the court noted that it did not matter

whether the defendant informs the trial court that he either understood personally, or was made

aware by or discussed with his attorney, the nature of the charges against him; whether defense

counsel informs the trial court that he informed his client of the charges against him; or the court

informs the defendant of the charges against him. *Id.* at 83. "The presence of any one of these

scenarios on the record is strong evidence, absent other circumstances tending to negate a finding

of voluntariness (*e.g.*, mental incapacity, lack of grasp of English language, etc.), that the

defendant entered the guilty plea knowingly and voluntarily." *Id.* at 83-84.

  It is clear from the transcript of the plea hearing that the court did not rely on a

presumption that, because Matthews was represented by counsel and had discussed the plea with

---

[15] Rule 4-242(c) states:

> The court may not accept a plea of guilty, including a conditional plea of guilty, until after an
> examination of the defendant on the record in open court conducted by the court, the State's
> Attorney, the attorney for the defendant, or any combination thereof, the court determines and
> announces on the record that (1) the defendant is pleading voluntarily, with understanding of the
> nature of the charge and the consequences of plea; and (2) there is a factual basis for the plea. ...
> The court may accept the plea of guilty even though the defendant does not admit guilt. Upon
> refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

Md. Rule 4-242(c).

him generically, he had been informed of the nature of the charge against him. *Daughtry*, 18 A.3d at 81; ECF No. 6-2 at 9–12. In this case, Matthews testified that he understood the nature of the crime to which he was pleading guilty, first degree murder, or had discussed with counsel the nature of the crime. ECF No. 6 Ex. 2 at 10. Counsel testified that he had discussed the nature and elements of first degree murder with Matthews. *Id.* The court asked Matthews if he understood what first degree murder was, to which he responded affirmatively. *Id.* at 10–11. Thus, all three scenarios listed in the *Daughtry* decision are present in the instant case, unlike the situation in *Daughtry*, where the court found none of the above scenarios present. *Daughtry,* 18 A.3d at 84. Although Matthews argues that the elements and nature of a charge of first degree murder were not explained to him on the record, ECF No. 1 at 13, *Daughtry* does not require that the explanation of the nature and elements of the charge be done on the record. *Daughtry,* 18 A.3d at 81; *see also* ECF No. 12-4 at 3.

Moreover, there are no "circumstances tending to negate a finding of voluntariness," *Daughtry*, 18 A.3d at 84, present in the instant case. For example, the results of Matthews' pretrial evaluations for competency and criminal responsibility were that he was both competent and criminally responsible. ECF No. 12-4 at 3. As the post-conviction court noted, Henslee testified that, although he believed that Matthews at times had difficulty understanding issues, Henslee compensated by taking extra time to break down the concepts. ECF No. 12-4 at 3–4; *see also* ECF No. 12-3 at 76. Further, Matthews testified at the plea hearing that he could read, write, and understand English. ECF No. 6-2 at 4.

Turning to the Statement of Reasons and Order of the Court, the post-conviction court listed several reasons for rejecting Matthews' contention that his plea was not knowing and voluntary. First, it credited Henslee's testimony that he "recalled specifically explaining the term

17

'premeditation' to both Petitioner and his family . . . ." ECF No. 12-4 at 4. As noted above, "a

determination of a factual issue made by a State court shall be presumed to be correct." 28

U.S.C. § 2254(e)(1). Credibility determinations "are 'factual determinations' for purposes of

Section 2254(e)(1)." *Sharpe*, 593 F.3d at 378.

Next, the Circuit Court also found credible the colloquy between Matthews and Henslee

at the plea hearing, during which Matthews indicated that he understood what it meant to plead

guilty and had been informed of the elements of the charge against him.[16] ECF No. 12-4 at 4. It

also noted that the trial judge "even went a step further in questioning the Defendant to ensure

that the Defendant did, in fact, understand the elements of the charges against him and how he

was proceeding that day." *Id.* The colloquy follows:

> Q.      You and I have had a chance to sit down and talk about this case a number
> of times, correct?
>
> A.      Yes.
>
> Q.      And you have had time that, we have had a chance to talk about what the
> State would have to prove against you in order to get a conviction?
>
> A.      Yes.
>
> Q.      Do you have any questions for me or the Court right now?
>
> A.      No.
>
> MR. HENSLEE: Okay.
>
> THE COURT: Okay. So I guess implicit in that last answer to the last
> question, Mr. Henslee, you have had an opportunity to discuss the
> elements of first degree murder, the nature of the offense with the
> Defendant.

---

[16] Counsel had previously explained and ensured that Matthews understood the trial and post-conviction rights he would be giving up by entering an *Alford* plea. ECF No. 6-2 at 4-9. He also explained what an *Alford* plea was. *Id.* at 6-7.

> MR. HENSLEE: I have, Your Honor. That's definitely what I meant about that last question.
>
> THE COURT: You are satisfied he understands what he's pleading guilty to here?
>
> MR. HENSLEE: Yes, Your Honor.
>
> THE COURT: Okay. In that ... case, Mr. Matthews, have you [had] ample and adequate opportunity to discuss with Mr. Henslee the nature of the offense to which you are pleading guilty here, the nature of the crime of first degree murder?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand what first degree murder is?
>
> THE DEFENDANT: Yes, sir.

ECF No. 6-2 at 9-11. After asking Matthews if he had any questions he wished to address to the

court and allowing him to consult with counsel, the court continued:

> THE COURT: You understand what a plea under the case of North Carolina versus Alford is. It's a type of a guilty plea and Mr. Henslee has had an opportunity to explain that to you, yes?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Any questions about what an Alford plea is?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All right. Well, it's my determination that this Defendant's waivers are free, knowing, voluntary and intelligent. I also find that his decision to tender an Alford plea, a plea under the authority of North Carolina versus Alford, is free, knowing, voluntary and intelligent decision as well . . . .

*Id.* at 11-12.

Based on the foregoing exchange, giving due deference to the post-conviction court's

factual findings, and considering the totality of the circumstances, this Court cannot find that the

Circuit Court either unreasonably applied clearly established federal law to the facts of this case,

or that the circuit court unreasonably determined the facts in light of the evidence presented in

the circuit court proceeding, as required under 28 U.S.C. 2254(d), in determining that Matthews

knew what he was pleading to and understood what he was doing. Matthews has not rebutted the

presumption of correctness by clear and convincing evidence. *See Sharpe*, 593 F.3d at 379.

Moreover, pleading guilty in order to avoid a conviction for first degree murder and a sentence

of life in prison without the possibility of parole, and, instead, receiving a life sentence with all

but sixty years suspended, ECF No. 1-1 at 1, represents a voluntary and intelligent choice among

the alternatives available to him. *See Alford*, 400 U.S. at 31; *see also Brady*, 397 U.S. at 751

(declining to hold that a guilty plea is compelled and invalid under the Fifth Amendment when

motivated by the defendant's desire to accept the certainty or probability of a lesser penalty

rather than face a wider range of possibilities extending from acquittal to conviction and a higher

penalty).

The Court rejects Matthews' argument that he did not understand what he was pleading

guilty to or understand the consequences of an *Alford* plea. Matthews had ample opportunity to

ask any questions during the plea hearing. Although he states that his attorney "told me just

agree and say yes to what I say," ECF No. 1-1 at 2, it is clear from Matthews' responses to

counsel's and the court's inquiries that the Circuit Court did not unreasonably conclude that

Mathews' plea was knowing, voluntary, and intelligent. Accordingly, Matthews' first ground for

relief is rejected.

Turning to Matthews' second claim, that counsel misled him regarding the terms of the

plea agreement, Matthews alleges that his trial attorney told him that he "would only receive 15

years for 2nd degree murder, wors[t] case scenario 30 yrs." ECF No. 1 at 13; *see also* ECF No. 1-

1 at 2 ("The only reason I took an Alford plea was because my lawyer told me he would get me 15 years for 2nd degree murder . . . ."). He further states that counsel sent him a letter advising him that if he were to go to trial he would "without a doubt" receive a life sentence. ECF No. 1-1 at 1; ECF No. 13-1. According to Matthews, "[t]he purpose of me tak[]ing this plea was to avoid a life sentence and a charge of first degree murder." ECF No. 1-1 at 1; *see also id.*, p. 2 ("[The] only reason I took this plea is because I did not want to spend the rest of my life in prison for a crime I did not commit.").[17] The transcript of the September 10, 2010 plea hearing, however, makes clear that the charge was first degree murder and the proposed sentence was life with all but sixty years suspended.

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Representation is deficient if it falls below an objective standard of reasonableness, considering all the circumstances. *Id.* at 688.

To satisfy the first part of this standard, it must be demonstrated that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 669. A federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. A

---

[17] With respect to the latter statement, Matthews never professed his innocence at the plea hearing. He now states that he did not say anything in court because he was afraid that the murderer would harm him or his family. ECF No. 1 at 13; ECF No. 1-1 at 5.

21

petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 at 689). "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." *Harrington v. Richter*, 562 U.S. 86, 109 (2011)(citations and internal quotation marks omitted); *see also Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010)("Counsel is not required to engage in the filing of futile motions."). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 526 U.S at 105 (citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

The second prong requires the court to consider whether counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable and that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 690-94. "The benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*at 687. A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *See id.* at 697.

The principles governing ineffectiveness claims apply in federal collateral proceedings as

they do on direct appeal or in a motion for new trial. *Id.* at 697. Indeed, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *Id.*

Moreover, the same principles apply in the context of guilty pleas. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). The *Hill* Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58; *see also Padilla v. Kentucky,* 559 U.S. 356, 371 n.12 (2010) ("In *Hill,* the Court recognized—for the first time—that *Strickland* applies to advice respecting a guilty plea."). The first prong of the *Strickland* test is nothing more than a restatement of the standard of attorney competence stated above. *Hill,* 474 U.S. at 58.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 59. The *Hill* Court reiterated that, as stated in *Strickland,* "these predictions of the outcome at a possible trial, where necessary, should be made objectively . . . ." *Id.* at 59–60; *see also Padilla,* 559 U.S. at 372 (noting that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

Turning to the facts of Matthews' case, the record shows that the plea agreement was explained at the outset of the plea hearing. The Assistant State's Attorney began by stating:

> Your honor, I have spoken with Counsel. It's my understanding we are proceeding by way of a guilty plea by way of Alford as to the sole count of first degree murder. Upon a finding of guilt, the State's recommendation is the Defendant be incarcerated for, life suspending all but 60 years to be served. My understanding [is] there will be a cap of 60 years for the Defense free to argue . . .
> .

ECF No. 6-2 at 2. Defense counsel confirmed his understanding of the plea agreement and added that "the Defense is obviously free to put on whatever mitigation evidence we wish and we are free to ask for whatever we want." *Id.* at 3. Asked if he understood the plea agreement being offered, Matthews responded affirmatively. *Id.* The court stated that it had bound itself to a cap of sixty years to serve. *Id.* After the Assistant State's Attorney presented the statement of facts, which the defense agreed the State would elicit were the case to go to trial, the court found Matthews guilty of first degree murder. *Id.* at 12–18.

The post-conviction court stated, in relevant part:

> At the hearing, Petitioner testified that trial counsel advised him of the plea offer made by the State. Petitioner testified that he recalled speaking with Henslee about the plea deal at the Baltimore County Detention Center and that Henslee advised him that the offer was a life sentence with all but a binding cap of sixty years suspended. Petitioner further testified that Henslee assured him that he could successfully argue the sentence to be reduced and that the Petitioner would serve no more than fifteen years. At the time of the plea hearing, Petitioner was again advised of the plea offer made by the State which was life suspend all but a binding cap of sixty years.

> At the hearing on the Post-Conviction, Henslee confirmed that he relayed the plea offer as cited above to Petitioner at the Baltimore County Detention Center. Henslee further testified that he advised Petitioner that the State would be recommending sixty years but that he would present mitigation evidence to try and persuade the presiding judge to impose a lower sentence. Henslee testified that at no time did he convey to Petitioner that he was likely to receive a sentence of fifteen years. Henslee testified that Petitioner was made aware of the fact that his co-defendant, Sharon Grimes, received a fifteen year sentence for her part in the crime, but Petitioner himself was never given any indication that he would receive the same, or even a similar sentence.

> . . . .

> As previously stated, Henslee testified he met with Petitioner numerous times prior to the plea hearing. Henslee testified he had explored in depth the options and strategies that could be used were the case to go forward to trial using Petitioner's account of the events the night of the murder (that he had ingested

24

PCP and has no recollection of the entire night).[18] Henslee tried to have blood evidence tested to see if Petitioner's blood contained traces of PCP but the results were inconclusive. Based on trial strategy, Henslee believed that it was in the best interest of Petitioner to accept the offer of the State. Considering the State's case against Petitioner, the testimony of Petitioner, the Petitioner's mother, and Henslee, as well as Henslee's experience as a criminal defense lawyer in Baltimore County this Court does not believe that Henslee did or would have conveyed to the Petitioner that he would receive a sentence of fifteen years.

ECF No. 12-4 at 4-6 (internal citation omitted). The court found:

From all of the testimony and evidence presented at the hearing on the Post-Conviction, as well as a full consideration of all papers and pleadings in the court file, the transcript from the plea hearing and the argument of counsel, this Court finds that Petitioner failed to meet both prongs of the Strickland test.[19] Advising Petitioner to take the plea offered by the State was sound trial strategy and likely resulted in the best outcome for Petitioner in light of the State's case against him.[20] Additionally, the Court does not find credible the assertion that Henslee advised Petitioner he would only be subject to a fifteen year term of incarceration considering the totality of the evidence and the facts of the case . . . .

*Id.* at 7.

As noted in the Statement and Order, in addition to Matthews' and Henslee's testimony, the post-conviction court heard testimony from Matthews' mother. She testified that she and Henslee met with her son to discuss pleading guilty under *Alford*. ECF No. 12-1 at 13-15. According to Ms. Matthews, she "talked [Matthews] into taking the plea," *id.* at 16, because she did not want him to "end up with life without parole," *id.* She understood that a sentence of life without parole was a possibility because, in the words of the Assistant State's Attorney, "the

---

[18] Matthews states that he did not want to explain to the trial court what really happened because he knew "my lawyer would not defend me." ECF No. 1-1 at 2. He continues: "So I said I didn't recall what happen[e]d the night of the murder and I was under the influence of PCP. So my att[o]rney told me it's possible I could of done this." *Id.* Matthews does not explain his statement that he knew "my lawyer would not defend me." Presumably it is based on the fact that Henslee advised Matthews to plead guilty rather than go to trial.

[19] As part of his second claim in state court, Matthews alleged ineffective assistance of counsel.

[20] The court previously noted that, despite Matthews' assertions at the post-conviction hearing, "the State had overwhelming evidence of his involvement in the murder." ECF No. 12-4 at 5.

25

facts are horrible." *Id.* at 42. She further stated that it was her understanding that Henslee

believed that, if Matthews went to trial, he would receive a sentence of life without parole. *Id.* at

20.

Ms. Matthews also testified about the terms of the plea agreement being discussed:

Q      What was your . . . understanding of the plea that Mr. Henslee wanted you to talk your son into?

A      Well at the beginning he had said 30 years and then he c[a]me back and told me that the State wouldn't go for 30, that they had to cap it at 60.

Q      Okay, and that was discussed during this jail visit?

A      Yes.

Q      That we're talking about?

A      Yeah, because when I, I said 60 years, I said well . . . that's like almost life, and he said we could talk it down. Once we got into court, he would be able to talk, try, try to talk it lower.

Q      Okay. Did he . . .

A      And he thought it would be lower.

Q      Did he mention any, any term of imprisonment with regard to talking it lower? Did he mention any number of years? He, meaning Mr. Henslee.

A      Thirty.

Q      Thirty years.

A      Mmhmm.

*Id.* at 16-17. Asked about the sixty years, she responded:

Q      Okay. Was there anything to lead you to believe, at that time, that Mr. Henslee had already spoken with the State's Attorney assigned to the case regarding the plea?

A      Yeah, that's where I figured he got the 60 years from, yes.

*Id.* at 19. Ms. Matthews further stated:

> Q    Okay. Now exactly what did Mr. Henslee say during this meeting regarding the possibility of a lower sentence?
>
> A    He said that he could argue and get 30 years. I think he . . .
>
> Q    He could argue.
>
> Q    . . . really thought he could get 30 years for him.

*Id.* at 23. On cross-examination, she testified that Henslee did not guarantee that he could get a

thirty year sentence, "but he, he was very convincing." *Id.* at 44. Ms. Matthews did not mention

any reference to fifteen years during her testimony.

Ms. Matthews was also asked whether second degree murder was discussed at the

meeting:

> Q    Okay. Do you remember if your son discussed a plea with regard to second degree murder?
>
> A    When?
>
> Q    At that time . . . The time of the visit.
>
> A    I don't believe so. No.
>
> Q    In your presence, did your son ask Mr. Henslee about second degree murder?
>
> A    Yes, I believe he did.
>
> Q    And do you recall and what, what was that conversation?
>
> A    I couldn't hear him. I could only hear Mr. Henslee.

*Id.* at 22-23.

The plea agreement was explained at the outset of the plea hearing. ECF No. 6-2 at 2. It

was made clear that defense counsel was free to argue for a lower sentence and present

27

mitigation evidence. *Id.* at 2-3.[21] The court had bound itself to a cap of sixty years, *id.* at 3, but could have imposed a lesser sentence. That it chose not to do so does not mean that Matthews was misinformed as to his potential sentence. It simply means that the court's judgment, after hearing the prosecution's statement of the facts, the defense's mitigation evidence, and argument, that life with all but sixty years suspended was the appropriate sentence.

The transcript of the plea hearing provides ample support for the post-conviction court's finding that Henslee did not mislead Matthews regarding the terms of the plea agreement. That determination rests largely on the court's credibility findings. This Court must defer to the Circuit Court's factual findings unless rebutted by clear and convincing evidence, which Matthews has not provided. This Court concludes, therefore, that the post-conviction court's determination of the facts was not unreasonable.[22]

> In concluding, the Circuit Court stated that:
>
> It appears to this Court, that while Petitioner has clearly been diagnosed with some emotional/behavioral disorders in the past, he is and was clearly capable of understanding the nature of the charges against him, the elements of the crime, and accepted the plea offer knowingly, intelligently and voluntarily with a full understanding of the potential consequences.

ECF No. 12-4 at 7-8. Therefore, the post-conviction court denied the application for post-conviction relief. *Id.* at 8.

---

[21] Counsel, in fact, did argue for a lesser sentence and present such mitigation evidence. Henslee argued that Matthews should receive the same sentence his co-defendant received, life with all but fifteen years suspended. ECF No. 12-2 at 87. Alternatively, Henslee asked the court to use second degree murder as a "barometer" of the guidelines of an appropriate sentence, if the court felt an increased sentence was more appropriate. *Id.*

   As mitigation, Henslee pointed to evidence that Matthews was under the influence of drugs the night of the murder. *Id.* at 24-26. Henslee produced an expert witness who testified regarding the effects of PCP, one of the drugs Henslee argued Matthews had taken that night. *Id.* at 27-45. Matthews' mother also testified at the sentencing hearing, as did his father, an aunt, and a neighbor. *Id.* at 46-67. Finally, Matthews addressed the court. *Id.* at 87-91.

[22] The post-conviction court's legal conclusion, that Matthews had failed to meet both prongs of the *Strickland* test, ECF No. 12-4 at 7, is not before this Court.

The post-conviction court did not incorrectly or unreasonably apply clearly established federal law to the facts of the case. Moreover, deferring to the state court's factual findings, including its credibility determinations, this Court cannot say that the post-conviction court unreasonably determined the facts of this case. Accordingly, there is no basis for this Court to overturn the circuit court's decision.

## IV.    CONCLUSION

Matthews' claims have been procedurally defaulted for federal habeas purposes. Even if that were not the case, Matthews' claims fail on the merits, giving due deference to the state court's factual findings. The Petition, therefore, will be denied and dismissed.

A Certificate of Appealability ("COA") will not issue because Matthews has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2); *see* Rule 11(a) of the *Rules Governing Section 2254 Proceedings in the United States District Courts*. A separate Order follows.

Dated: September __, 2016

GEORGE J. HAZEL
United States District Judge